# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **INFINITY COMPUTER PRODUCTS, INC. :** | **CIVIL ACTION** |
| *Plaintiff* : | |
| : | **NO. 12-6796** |
| **v.** : | **(lead case)** |
| : | |
| **TOSHIBA AMERICA BUSINESS** : | |
| **SOLUTIONS, INC.** : | |
| *Defendant* : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                        FEBRUARY 22, 2019

## MEMORANDUM OPINION

### INTRODUCTION

Presently before this Court is a motion for partial summary judgment filed by Defendants,[1] which seeks an order to effectively limit the time periods in which Plaintiff Infinity Computer Products, Inc. ("Plaintiff" or "Infinity") can recover damages for its alleged infringement claims. [ECF 70]. Specifically, Defendants seek a ruling limiting liability for alleged acts of patent infringement with respect to devices they made, used and/or sold before the issuance of the reexamination certificates for Plaintiff's U.S. patents. In seeking this limitation on damages, Defendants invoke the absolute intervening rights and pre-issuance damages protections provided

---

[1]     By Order dated January 12, 2018, [ECF 58], the following cases were consolidated: *Infinity Comput. Prods., Inc. v. Toshiba Am. Bus. Sols., Inc.*, 12-cv-6796; *Infinity Comput. Prods., Inc. v. Oki Data Ams., Inc.*, 2:12-cv-6797; *Infinity Comput. Prods., Inc. v. Samsung Elecs. Am., Inc.*, 12-cv-6798; *Infinity Comput. Prods., Inc. v. Lexmark Int'l, Inc.*, 12-cv-6799; *Infinity Comput. Prods., Inc. v. Canon USA, Inc.*, 12-cv-6800; *Infinity Comput. Prods., Inc. v. Konica Minolta Bus. Sols., U.S.A., Inc.*, 12-cv-6802; *Infinity Comput. Prods., Inc. v. Panasonic Corp. of N. Am.*, 12-cv-6803; *Infinity Comput. Prods., Inc. v. Xerox Corp.*, 12-cv-6804; *Infinity Comput. Prods., Inc. v. Hewlett-Packard Co.*, 12-cv-6805; *Infinity Comput. Prods., Inc. v. Epson Am., Inc.*, 12-cv-6806; *Infinity Comput. Prods., Inc. v. Ricoh Ams. Corp.*, 12-cv-6807; and *Infinity Comput. Prods., Inc. v. Dell, Inc.*, 12-cv-6808. The Defendants making the underlying motion include: Toshiba America Business Solutions, Inc.; Samsung Electronics America, Inc.; Konica Minolta Business Solutions, U.S.A., Inc..; Panasonic Corporation of North America; Xerox Corporation; Hewlett-Packard Company; Ricoh Americas Corporation; and Dell, Inc.

by 35 U.S.C. §252. Plaintiff opposes this motion and denies that the patents were substantially amended during reexamination proceedings before the United States Patents and Trademark Office ("USPTO"). [ECF 79]. The issues raised by the parties have been fully briefed and are ripe for disposition.[2] For the reasons set forth below, Defendants' motion for partial summary judgment is granted.

## BACKGROUND[3]

Briefly, the issue before this Court is whether the original and subsequently amended patent claims are substantially identical. To address this issue and the arguments made, a summary of relevant facts is appropriate; *to wit*:

On December 5, 2012, Plaintiff filed complaints alleging infringement of four patents by each of the Defendants in this now-consolidated matter.[4] Plaintiff's complaints allege that Defendants' use and/or sale of Defendants' multifunction printers infringe one or more claims of each of Plaintiff's asserted patents. On April 30, 2013, this matter was stayed to allow the USPTO to complete its reexaminations of the asserted patents at issue.[5] Following these reexaminations, on August 8, 2017, the stay was lifted, and the matters were consolidated on January 12, 2018.

---

[2]     This Court has also considered Defendants' reply, [ECF 80], and Plaintiff's *sur*-reply, [ECF 84].

[3]     The procedural and factual histories are known to the parties. Therefore, only the facts pertinent to the underlying motion will be discussed. These facts are primarily taken from the parties' respective briefs and supplied exhibits. To the extent that the facts are disputed, such disputes are noted, and if material, pursuant to Federal Rule of Civil Procedure 56, they will be construed in Plaintiff's favor.

[4]     This matter was originally assigned to the Honorable Legrome D. Davis and, subsequently, reassigned to the undersigned on October 3, 2017.

[5]     The patents at issue in this matter are the following: U.S. Patent Nos. 6,894,811 (the "'811 Patent"); 7,489,423 (the "'423 Patent"); 8,040,574 (the "'574 Patent"); and 8,294,915 (the "'915 Patent"), (collectively, the "asserted patents").

2

At the outset of the reexamination for each asserted patent, the patent examiner rejected all of the originally-issued claims, having determined that each original claim was unpatentable in view of inventions disclosed in earlier-filed patents, *i.e.*, prior art (primarily the "Kang" prior art) that had not been considered by the patent examiner during the initial evaluation of the asserted patents. In response to the patent examiner's rejections and suggestions, Plaintiff amended each of the claims by either adding (1) the term "generic" or (2) the phrase "using an unmodified standard protocol for" to the original patent claims so as to distinguish the claimed subject matter over the newly-cited prior art. After Plaintiff made these amendments, the patent examiner allowed the amended claims, and concluded that the newly-added limitations distinguished over the cited prior art. Each reexamination of the particular asserted patent is described below in more detail.[6]

### *Reexamination of the '811 Patent*

On May 26, 2011, the USPTO initiated an *ex parte* reexamination of the '811 patent. On September 21, 2011, the assigned examiner issued an office action rejecting all of the original claims of the '811 patent as unpatentable over certain prior art references. All of the rejections identified the Kang prior art as the primary prior art reference. To address these rejections, the examiner and Plaintiff's representatives discussed the references during an interview. In the written summary of the interview, the USPTO stated, "[t]he differences between Kang and the invention were discussed, but in the Examiner's view, the claims do not differentiate from Kang's disclosure."

---

[6]     The description of the reexamination proceedings is taken primarily from Defendants' motion, which is supported by various documents contained in the prosecution history of the patents at issue. Notably, Plaintiff, in its response, does not contest any of these facts/descriptions.

3

After the interview and in response to the examiner's action, Plaintiff amended every claim of the '811 patent. In claims 1-6 and 18-20, Plaintiff added the phrase "unmodified standard protocol" to the "send/receive driver communications software" limitation. In claims 7-17 (all of the remaining claims), Plaintiff added the phrase "using an unmodified standard protocol for" to the "shifting the personal computer" limitation. Plaintiff asserted that the claims, as amended, were now patentable over Kang because Kang did not disclose the new limitation "'unmodified standard protocol send/receive driver communications software,' as now recited in all of the claims of the instant patent."

The examiner's next office action acknowledged that Plaintiff's amendments to all of the claims now differentiated the claimed invention from Kang, and that by adding the phrase "using an unmodified standard protocol for" to the "shifting the personal computer" limitation made claims 7-17 allowable. The examiner again rejected claims 1-6 and 18-20, however, because adding the phrase "unmodified standard protocol" to the "send/receive driver communications software" limitation was not supported by the specification of the '811 patent (*i.e.*, the specification did not contain a "written description" of the invention as described in the revised claims). However, the examiner suggested an amendment to claims 1-6 and 18-20 that would overcome both the prior art rejections and the written description rejection:

> Claims 1-6 and 18-20 would be allowable if amended to indicate that the send/receive driver communications software is "generic" rather than "unmodified standard protocol" or if otherwise amended to overcome the §112, 1st paragraph rejections and to patentably distinguish the claims from Kang and Kochis.

The examiner explained that the term "generic" would distinguish the '811 patent from what had been disclosed in Kang because the "send/receive driver communications software" disclosed in Kang is not "generic" since "it is specifically tailored to the transmission and receipt of image data

4

between a fax machine and a computer and would be unsuitable for generalized data transfer purposes, such as transmitting non-image data not intended for a fax machine." The examiner further explained that the addition of the term "generic" was permissible because "the specification of the '811 patent teaches the send/receive driver communications software as being 'any available' or 'generic,' as opposed to 'unmodified standard protocol'" software. On February 21, 2012, Plaintiff followed the examiner's claim amendment suggestion and replaced the language "unmodified standard protocol" with the term "generic" in the rejected claims.

Plaintiff's February 21, 2012 amendments to claims 1-6, 18, and 20 overcame the prior art and written description rejections. However, with regard to claim 19, the examiner required more explanation as to how the addition of "generic" differentiated the pending claims from the prior art: "Claim 19 has been amended to denote that 'the computer is equipped with generic send/receive driver communications software,' but "[m]erely equipping the computer with such software would not differentiate the claim from the prior art. Rather, equipping the computer with the generic software such that the generic software is enabled to receive scanned image signals from a fax machine and/or to send computer data to the fax machine for printing is necessary for overcoming the prior art (such as in claims 1, 6, 18, and 20)." Plaintiff filed a supplemental amendment on March 29, 2012, following the examiner's guidance, stating that "[i]n response, the patent owner has amended claim 19 substantially as indicated by the Examiner in the Advisory Action." On July 31, 2012, the USPTO issued a reexamination certificate reflecting all of Plaintiff's amendments to each and every claim of the '811 patent.

Notably, during the '811 patent reexamination, Plaintiff never asserted that its claim amendments were merely clarifying amendments, that the terms "using an unmodified standard

5

protocol for" were inherent to the "shifting the personal computer" limitation, or that the term "generic" was inherent in the "send/receive driver communications software" limitation.

### *Reexamination of the '423 Patent*

An *ex parte* reexamination of the '423 patent proceeded in parallel with the '811 patent reexamination and followed the same procedural and substantive events discussed above. That is, the examiner rejected all of the claims of the '423 patent as unpatentable over Kang and another prior art reference. As in the '811 patent reexamination, the patent examiner and Plaintiff's representatives discussed "[t]he differences between Kang and the invention" during a reexamination interview, "but in the Examiner's view, the claims do not differentiate from Kang's disclosure." Following the interview, Plaintiff amended every claim: "Each of the claims is being amended to recite 'unmodified standard protocol send/receive driver communications software.'" Plaintiff again argued that the claims, as amended, were now patentable over Kang because Kang did not disclose "'unmodified standard protocol send/receive driver communications software,' as now recited in all of the claims of the instant patent."

The examiner again rejected all of the claims because, although the new "unmodified standard protocol" limitation distinguished the original claims over the Kang prior art reference, those amendments did not have written description support in the specification of the '423 patent. As with the '811 patent, the examiner proposed adding "generic" in lieu of "unmodified standard protocol." The examiner suggested that "[c]laims 1-6 would be allowable if amended to indicate that the send/receive driver communications software is 'generic' rather than 'unmodified standard protocol' or if otherwise amended to overcome the § 112, 1st paragraph, rejections and to patentably distinguish the claims from Kang and Kochis." Plaintiff again followed the examiner's suggestion and amended the claims to recite "generic send/receive driver communications

6

software." On May 1, 2012, the USPTO issued a reexamination certificate amending all of the claims of the '423 patent.

During the '423 patent reexamination, Plaintiff never suggested that its claim amendments were merely clarifying amendments or that the term "generic" was inherent in the "send/receive driver communications software" limitation.

### *Reexamination of the '574 Patent*

The USPTO initiated an *ex parte* reexamination of the '574 patent, and on April 29, 2013, rejected all of the claims of the '574 patent because all aspects of the claims were disclosed in Kang and another prior art reference. In response, Plaintiff amended every claim of the '574 patent to add the term "generic" to the "send/receive driver communications software" limitation. Plaintiff argued that the addition of "generic" to every original claim of the '574 patent altered the claim scope to differentiate over what Kang disclosed:

> Kang teaches "send/receive driver communications software." However, Kang teaches a facsimile device and computer the [sic] communicate in a specific manner that could not be accomplished using "generic" send/receive driver communications software, as now recited in amended claim 1 and similarly in amended claim 8.

The examiner still did not find that Plaintiff's amendment rendered the '574 patent claims patentable and maintained the rejection. The examiner noted it was unclear what Plaintiff meant by "generic" send/receive driver communications software. In this regard, the examiner noted "[a]lthough the alleged characteristics of 'commercial-off-the-shelf' software of 'not customized' and 'not tailored' may be a form of the invention . . . they are not limiting as a required element of the claimed invention since that would involve improperly importing elements into the claims." Thereafter, Plaintiff and the examiner scheduled an interview to discuss the examiner's continued rejections. Prior to the interview, Plaintiff submitted a proposed interview agenda articulating that

7

"no combination of references teaches 'generic' software as each of them use non-generic and non-standard software to achieve the relevant functions of sending/receiving to a distinct multifunction device." During a subsequent interview between the examiner and Plaintiff, Plaintiff explained how the addition of "generic" altered the scope of the claims: "Patent Owner asserted that Generic in the context of the specification for its use of 'conventional' and 'standard' limits the invention to non-proprietary 'send/receive communications software' that uses standard telefax and standard PC." Prior to that interview, Plaintiff wrote to the examiner, stating that "an appropriate interpretation of the term 'generic send/receive driver communication software' would preclude proprietary software, such as that disclosed in the prior art references," and a construction of "generic" that would include proprietary software would not give "any weight being applied to the term 'generic,' effectively eliminating the term from the claims."

Following the interview, Plaintiff filed a written response to the examiner's office action rejections. The response emphasized how the prior amendment adding "generic" made the claims patentable. As in the interview, Plaintiff asserted in its written response that the addition of "generic" differentiated the claimed invention from the prior art identified in the examiner's rejection.

> [T]he software taught by the prior art . . . applied by the Examiner
> would not be understood to be "generic send/receive driver
> communications software," as none of the software falls into "a
> group or class of send/receive driver communications software
> capable of interfacing with standard/conventional facsimile
> machine using standard communication protocols on a standard
> PC."

The examiner accepted Plaintiff's written argument, and on March 17, 2014, the USPTO issued a reexamination certificate reflecting Plaintiff's amendments to all of the claims of the '574 patent.

8

During the '574 patent reexamination, Plaintiff never asserted that its claim amendments were merely clarifying amendments or that the term "generic" was inherent in the "send/receive driver communications software" limitation.

### *Reexamination of the '915 Patent*

An *ex parte* reexamination of the '915 patent proceeded in parallel with the '574 patent reexamination, and it followed the same sequence of events. On April 24, 2013, the examiner issued an office action rejecting all of the claims of the '915 patent as unpatentable over Kang and other prior art references.

In response to the examiner's rejections, Plaintiff cancelled claims 5 and 13 and amended every remaining claim by adding a limitation that required the "send/receive driver communications software" to be "generic." In accompanying arguments advanced in its response to the examiner's rejections, Plaintiff emphasized that the amendments sufficiently altered the claims so as to overcome the examiner's rejections.

As in the '574 patent reexamination, the examiner maintained its prior rejections of the claims of the '915 patent and added new grounds for rejection. Following a reexamination interview, Plaintiff filed a response without any further claim amendments but emphasized how the addition of "generic" altered the claims to overcome the examiner's rejections. Plaintiff argued that "the software taught by the prior art . . . applied by the Examiner would not be understood to be 'generic send/receive driver communications software,' as none of the software falls into 'a group or class of send/receive driver communications software capable of interfacing with standard/conventional facsimile machine using standard communication protocols on a standard PC." The examiner accepted Plaintiff's argument, and on March 21, 2014, the examiner issued a reexamination certificate reflecting the amended claims.

9

During the '915 patent reexamination, Plaintiff never asserted that its claim amendments were merely clarifying amendments or that the term "generic" was inherent in the "send/receive driver communications software" limitation.

Reexamination certificates for each asserted patent were issued on the following dates:

| Asserted Patents: | Date Reexamination Certificate Issued: |
|---|---|
| '811 Patent | July 31, 2012 |
| '423 Patent | May 1, 2012 |
| '574 Patent | March 17, 2014 |
| '915 Patent | March 21, 2014 |

As noted, in their underlying motion for partial summary judgment, Defendants argue that Plaintiff is precluded from obtaining any damages for Defendants' sale and/or use of any alleged infringing products that were made prior to the relevant reexamination certificate dates pursuant to defenses provided by 18 U.S.C. §252.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material if it may "affect the outcome of the suit under the governing law" and a dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party bears the burden of identifying portions of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When

10

the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). That is, the moving party must demonstrate that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Id.*

On the other hand, "with respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Celotex*, 477 U.S. at 325. If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

"After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials' that show a genuine issue of material fact or by 'showing that the materials cited do not establish the absence or presence of a genuine dispute.'" *Davis v. City of Philadelphia*, 2015 WL 4404871, at *2 (E.D. Pa. July 20, 2015) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories,

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"
*Celotex,* 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

To demonstrate the existence of a genuine issue, a party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Likewise, "unsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Rather, a party must present evidence sufficient to create a triable issue. *Anderson*, 477 U.S. at 248–49; *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). By evidence, Rule 56 means "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In construing such evidence, however, the Court must draw inferences in the light most favorable to the nonmoving party. *See A.W. v. Jersey City Publ. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007). In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–49.

As noted, the relevant legal question before this Court is whether the original and amended patent claims are substantially identical. "To determine whether a claim change is substantive it is necessary to analyze the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998). The Federal Circuit has held that the role of the district court is to "determine whether there is ***any***

12

*product or process* that would infringe the original claim, but not infringe the amended claim."
*R+L Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346, 1350 (Fed. Cir. 2015) (emphasis added).

## DISCUSSION

In their motion for partial summary judgment, Defendants invoke two limitations provided by 35 U.S.C. §252 on the damages recoverable by a patentee when a patentee substantively amends a patent's claims by altering the patent's scope during reexamination.[7] Under the first limitation, which will be referred to as the "pre-issuance damages defense," Defendants argue that the patentee cannot recover damages prior to the issue date of the patent's reexamination certificate. The pre-issuance damages defense arises out of the first paragraph of §252. Under the second limitation, which will be referred to as the "absolute intervening rights defense/doctrine." Defendants argue that the patentee cannot recover damages for alleged infringement after the issue date of the patents' reexamination certificates with respect to any product already in existence prior to the date of reissuance. The absolute intervening rights defense arises out of the second paragraph of §252. Plaintiff disputes the application of both of these damage limitations.

### *Pre-Issuance Damages Defense*

Defendants first argue that Plaintiff is precluded by the first paragraph of §252 from obtaining any damages attributable to any alleged infringement that occurred prior to the issuance date of the reexamination certificates, *i.e.*, pre-issuance damages. In support of this argument, Defendants contend that Plaintiff narrowed the scope of the original claims during the reexamination proceedings when it amended the claims by adding either "generic" or "unmodified standard protocol." In doing so, Defendants argue, Plaintiff's claims underwent a

---

[7]     Although 35 U.S.C. §252 only discusses reissued patents, it was made applicable to reexamined patents by 35 U.S.C. §307(b). *Fortel Corp. v. Phone-Mate, Inc.*, 825 F.2d 1577, 1579 (Fed. Cir. 1987).

13

substantive change which effectively precludes any damage alleged for the pre-issuance period under the first paragraph of §252. Plaintiff does not dispute that the claims were so amended. Instead, Plaintiff disputes that the amendments "substantively" changed the scope of the original claims and argues that the amendments merely clarified limitations that were inherent in the original claims. Specifically, Plaintiff argues that "[e]ach of these claims was amended to recite the word '*generic*' preceding the phrase 'send/receive driver communications software' (or an equivalent 'software' term) in the corresponding originally-issued claim" and that "the reexamined claims simply clarified that the communication software recited in the corresponding original claims was 'generic.'" The parties' arguments are addressed below.

If a patent owner amends its claims during reexamination proceedings, it is not entitled to damages prior to the issue date of the reexamination certificate unless the original and reexamined claims are "substantially identical." 35 U.S.C. §252, 307(b); *Presidio Components, Inc. v. American Technical Ceramics Corp.*, 875 F.3d 1369, 1377-78 (Fed. Cir. 2017) ("An owner of a patent that survives reexamination is not entitled to infringement damages for the time period between the date of issuance of the original claims and the date of issuance of the reexamined claims if the original and amended claims are not 'substantially identical.'"). In other words, if an amendment during reexamination makes a substantive change to an original claim, the patentee is only entitled to infringement damages for the changed claim for the period *following* issuance of the reexamination certificate. *Id.* (citing *R+L Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346, 1349 (Fed. Cir. 2015) and *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997)).

In determining whether substantive changes have been made, a court must discern whether the scope of the claims are substantially identical, not merely whether different words are used.

14

*See Convolve, Inc. v. Compaq Comput. Corp.*, 812 F.3d 1313, 1322 (Fed. Cir. 2016) (holding that "[i]t is the scope of the claim that must be identical, not that identical words must be used.") (citing *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1116 (Fed. Cir. 1987)). In determining the scope of the claims, this Court must apply the traditional claim construction principles outlined in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), "paying particular attention to the 'examiner's focus in allowing the claims' after amendment." *Convolve*, 812 F.3d at 1322-23 (quoting *R+L Carriers*, 801 F.3d at 1351).

Amendments made during reexamination, even those made after a rejection based on prior art, "do not necessarily compel a conclusion that the scope of the claims has been substantively changed." *Convolve*, 812 F.3d at 1322. Rather, "[t]o determine whether a claim change is substantive it is necessary to analyze the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." *Id.* (quoting *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1362–63 (Fed. Cir. 1991)). However, amendments made to overcome a prior art rejection during reexamination are "a highly influential piece of prosecution history," and it is "difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1348 (Fed. Cir. 1998). To determine whether an amended claim is narrower in scope, "we must determine whether there is any product or process that would infringe the original claim, but not infringe the amended claim." *R+L Carriers*, 81 F.3d at 1350.

This Court finds that the intrinsic evidence, including the claims, the specification, and the reexamination prosecution histories, shows that the amendments Plaintiff made during the reexamination proceedings as to each of the patents-in-suit were substantive, as each amendment

15

altered the scope of the patents' claims. Here, the word "generic" and "unmodified standard protocol for" are terms with specific meaning in the context of these asserted patents. In particular, adding the word "generic" before the term "send/receive driver communications software" in all but eleven of the claims, constituted a substantive change. The original claims (without the word "generic") included specific or tailored software as well as generic software, whereas the post-amended reexamined claims exclude specific software and limited the claims to generic software. Indeed, as the patent examiner found during the reexaminations, this substantive change was necessary to overcome the Kang and other prior art referenced in order to make Plaintiff's asserted patents patentable. As the Federal Circuit observed in *Laitram*, 163 F.3d at 1348, it is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment. Here, all of the relevant claims were rejected based on the prior art. To overcome the rejections, Plaintiff made the amendments discussed. Thereafter, the claims, as amended, were allowed. This chronology of events before the USPTO supports a finding of a substantive change to the original claims. That is, from the prosecution history, the original patent claims were broader and covered both generic software and non-generic software. Following the reexaminations, amendments were made to the claims to avoid the cited prior art. These amended claims were narrowed to cover only generic software. Prior to reexamination, none of the patent claims were limited to generic send/receive driver communications software; rather the software could have been generic or, as explained by the examiner with respect to the prior art reference, "specifically tailored."

Similarly, in the remaining eleven claims (claims 7-17 of the '811 patent), Plaintiff changed the claim scope by adding "unmodified standard protocol" before "shifting the personal computer." Prior to reexamination, any protocol could meet the limitation: non-standard,

16

modified standard, or unmodified standard protocols. To distinguish prior art that taught modified standard protocols, Plaintiff amended each of those claims to specifically require shifting by *unmodified standard protocols*. After the amendments, no longer could the claims read on a method using any other protocol. This Court finds that this amendment resulted in a substantive change in the scope of the patents' claims.

As noted, Plaintiff argues that the original asserted patents prior to amendment were inherently limited to "generic" software. While Plaintiff is correct to look to the patents' specification to determine the patents' scope, the specification does not support Plaintiff's argument. The term "generic" does not appear anywhere in the text of the specification. Rather, it appears only in one of several figures included with the specification, *i.e.*, Figure 2g. Figure 2g, however, is but a single embodiment of the claimed invention. Moreover, the patent includes the following description of the embodiment to Figure 2g: "*Any* available send/receive communications software package is acceptable." (emphasis added). This description with the inclusion of the word "any" belies any notion that the scope of the original patent was limited to "*generic* send/receive communications software."

Furthermore, Plaintiff never indicated in the specification or during the original prosecution of the asserted patents or during the reexamination proceedings that the claimed invention was somehow limited to methods employing "generic" send/receive driver communications software. While Figure 2g identifies a single embodiment with "generic" software, nothing in the specification or prosecution history supports a narrow construction that deviates from the plain and ordinary meaning of "send/receive communications software" sufficient to exclude non-generic or specifically-tailored or specialized software. Indeed, the specification indicates otherwise; *i.e.*, that Plaintiff intended to capture non-generic software

17

within the claims' original scope when it states that "any available" send/receive driver communications software will suffice.

Because none of the amended claims of the asserted patents are substantially identical to the original claims, Plaintiff is precluded, as a matter of law, from recovering any pre-issuance damages, *i.e.*, damages for alleged infringement before the issue dates of the reexamination certificates. 35 U.S.C. §252, 307(b); *Presidio Components, Inc.*, 875 F.3d at 1377-78. Therefore, Plaintiff cannot recover damages for any alleged infringement of the asserted patents prior to the dates of the reexamination.

### *Absolute Intervening Rights Defense/Doctrine*

Defendants also argue that Plaintiff's damages should be further limited pursuant to the doctrine/defense of absolute intervening rights. Under this doctrine, which is derived from the first sentence of the second paragraph of §252, an alleged infringing party is entitled "to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported" prior to the issuance of a reexamination certificate. 35 U.S.C. §252.[8] Defendants argue that under this statutory doctrine, any products they made prior to the patents' reissuances, but sold after the reissuances, may not be the subject of Plaintiff's patent infringement claims. Plaintiff disagrees and argues that the absolute intervening rights defense does not apply to method or process claims, like those admittedly at issue here, but only applies to apparatus claims.

This issue has not been decided by the Federal Circuit and is subject to a split among a few district courts. However, this Court finds most persuasive the recent decision in *Sonos, Inc. v.*

---

[8]     As noted, the damage limitations provided in 35 U.S.C. §252 have been made applicable to reexamined patents by 35 U.S.C. §307(b). *See supra* note 7.

*D&M Holdings, Inc.*, 287 F. Supp. 3d 533, 539 (D. Del. 2017), which rejected the same argument

Plaintiff makes here. Specifically, the *Sonos* court found that:

> the statutory protection offered by absolute intervening rights does
> not depend on whether the claims at issue are apparatus or method
> claims. Rather, absolute intervening rights extend to the 'specific
> thing' that was made, purchased, offered for sale, used, or imported
> before the issuance of the reissued or reexamined claims. Thus, the
> distinction between absolute intervening rights and equitable
> intervening rights is that absolute intervening rights extend only to
> those 'specific thing[s]' in existence before the reissuance or
> reexamination, while under the doctrine of equitable intervening
> rights, a court can allow a party to continue to practice a process
> covered by the reissued or reexamined patent if the statutory
> conditions for that relief are satisfied . . . . [D]rawing a sharp line
> between product claims and method claims in determining
> eligibility for absolute intervening rights could result in defeating
> the purpose of the statute to provide intervening rights for particular
> goods made prior to the reissue or reexamination. For example, if
> particular goods were made by a process that is separately covered
> by a process claim that was also changed upon reissuance or
> reexamination, absolute intervening rights would be of no benefit to
> the accused infringer if the patentee could simply assert a parallel
> process claim against the process that was used to make the very
> same products that were intended to be protected by absolute
> intervening rights. Thus, to apply the statutory language, it is
> necessary to focus on the nature of the product or the activity in
> question so as to determine whether the protection of absolute
> intervening rights is being extended to "specific thing[s]" in
> existence at the time of the reexamination.

*Id.* at 539-40. The *Sonos* court went on to hold that the "use or sale of those particular controllers

[*i.e.*, products] that had already been manufactured would not be subject to infringement liability,

even if they were used to practice the method recited in claim 16." *Id.* at 541.

This Court agrees with the *Sonos* analysis and finds additional support in the Federal

Circuit's decision in *BIC Leisure Products, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993), as well as language

in the Patent Act itself. In *BIC*, the Federal Circuit addressed the scope of §252's intervening

rights defense as follows:

The first sentence defines "absolute" intervening rights. This sentence provides an accused infringer with the absolute right to use or sell a ***product*** that was made, used, or purchased before the grant of the reissue patent as long as this activity does not infringe a claim of the reissue patent that was in the original patent. This right is absolute. In the words of the statute, "[n]o reissue patent *shall* abridge or affect the right of any person." As long as the use or sale of the ***accused product*** does not infringe a claim of the reissue patent that also was in the original patent, the owner of the reissued patent has no recourse under the Patent Act.

This absolute right extends only to ***anything made***, purchased, or used before the grant of the reissue patent. In other words, it covers ***products*** already made at the time of reissue.

*Id.* at 1220-21 (emphasis added). Notably, the Federal Circuit interchanged the words "product," "accused product," and "anything made" with §252's use of the words "specific things made." That this language would include products made by the use of one's patented method/process is consistent with language contained throughout the Patent Act with respect to the infringement of method/process patents. For example, §271 provides the requirements for the infringement of a patent. Specifically, §271(g) addresses infringement in the context of a process or method patent, like those at issue in this case. Indisputably, this provision prohibits the sale of "a product which is made by a process patented . . . ." *See also* 35 U.S.C. §295 (addressing "product made by patented process."). Relying on the Federal Circuit's decision in *BIC*, and the plain language of §252, this Court finds that the statute's use of the term "specific things made" refers to any product made that is alleged to infringe the patent(s) at issue, whether they are apparatus or method/process patents.

Here, many, if not all, of the products made or "accused products" on which Plaintiff's infringement claims are based are devices sold by Defendants which utilize the "process [or methods] patented" by Plaintiff. This Court finds that any such products that were made prior to the reissuances of the patents at issue may not be the subject of Plaintiff's infringement claims.

20

**CONCLUSION**

For the reasons stated herein, this Court finds that a fair reading of the specifications and in light of the prosecution histories, Plaintiff's amended claims were all substantively changed during the relevant reexamination proceedings, resulting in a narrowing in scope of the patents' claims. As such, the damages Plaintiff may obtain in this matter are subject to the limitations imposed by 35 U.S.C. §252. Accordingly, Defendants' motion for partial summary judgment is granted. An Order consistent with this Memorandum Opinion follows.


*NITZA I. QUIÑONES ALEJANDRO, J*